Joseph MATARAZZO, Plaintiff,

v.

FRIENDLY ICE CREAM CORPORATION, Defendant.

No. 73–C–545.

United States District Court,
E. D. New York.

Feb. 23, 1976.

Kreindler & Kreindler, New York City, for plaintiff; Paul M. Bernstein, of counsel.

Pollack & Kaminsky, New York City, for defendant; Daniel A. Pollack, Martin I. Kaminsky, Stephen W. Berger, of counsel.

BARTELS, District Judge.

### MEMORANDUM–DECISION AND ORDER

This is a motion pursuant to Rule 15 Fed.R.Civ.P. for leave to file an amended complaint in order to (1) allege facts with greater specificity with respect to claims against the defendant, and at the same

**558**

time to (2) add a pendent common law claim arising out of the same acts, practices and course of conduct. The essence of the original complaint is set forth in the class action determination decided on February 14, 1974, *Matarazzo v. Friendly Ice Cream Corp.*, 62 F.R.D. 65 (E.D.N.Y.1974).

Defendant Friendly Ice Cream Corp. (Friendly) is a food processor and distributor of ice cream, beverages and food products, operating stores in many states. Plaintiff claims the defendant violated the federal antitrust laws by reason of the manner in which it conducted its business with the plaintiff and those he represents as former store managers. In particular, plaintiff in his original complaint alleges that the contracts with the store managers were not employment contracts but were, in fact, standardized franchise agreements requiring the store managers to purchase all their requirements from Friendly at fixed prices and to charge fixed prices for the same as a condition for the use by them of Friendly's trademark and trade name. These contracts plaintiff claims constitute illegal "tying" arrangements, price fixing and resale price maintenance in violation of the Sherman and Clayton Acts. Defendant contends that the agreement between it and the store managers was not a franchise arrangement, but clearly created the relationship of employer and employee.

While the plaintiff claims that its first proposed amendment (Count I) simply alleges facts with more specificity, the amendment does more than that insofar as it no longer describes the store managers as "franchisees" but eliminates that description which he had used thirteen times in his original complaint.[1] In lieu thereof, the amendment substitutes the words "store manager" and at the same time claims that each store was operated as "a separate and independent business entity" and that the managers were in fact "independent contractors operating through restrictive provisions thus constituting a separate and dis-

tinct market for the products named" in Friendly's contracts, instructions, rules and regulations, which plaintiff described as "contracts" with independent business contractors.

The second proposed amendment (Count II) sets forth an alleged pendent claim. It states that during the class period defendant, in the course of its contact with class members committed fraud, breach of contract, breach of duty and planned "economic entrapment" with store managers which began with the recruitment of manager trainees and continued through the termination of the relationship with the defendant. The substance of this wrongful conduct, plaintiff claims, was caused by misleading advertisements and false and misleading representations to the store managers, by unfair charges and secret rebates from suppliers and unilateral manipulation and diminution of the net profits of the store for a period of ninety days after the termination of the relationship between the parties. In the amendment plaintiff claims that these charges are relevant to determine the "status" issue presented by the antitrust claim and "may be found whether or not store managers are found to be independent business men."

## COUNT I

■ There is no doubt that leave to amend under Fed.R.Civ.P. 15 "shall be freely given when justice so requires," and there is equally no doubt that the court will abuse its discretion by denying leave without a justifying reason, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, where claims are set forth in the proposed amendment which might materially alter the nature of the action years after the action has been instituted and also after substantial discovery has been conducted, the court should scrutinize the amendment to ascertain if any new issues are actually injected into the case. In the context of Count I of this amend-

---

1. The Court finds no infirmity in the present complaint which requires more specific allegations. See Fed.R.Civ.P. 8(a) & (e)(1). This was also true at the time the class status was granted.

ment the issue presented is whether there is a material difference between the allegation that a franchise relationship existed and the allegation that an independent contractor relationship existed. The relationship between the plaintiff and the defendant in both cases must derive initially from the good name and trademark of Friendly.

■ Although a franchise is frequently referred to as a license it also involves a contract with the franchisee. Under such a hybrid arrangement a franchisee, although an independent contractor in a limited sense, must perform according to the judgment, rules, regulations, methods and guidelines of the franchisor. On the other hand, the customary independent contractor exercises his independent judgment and performs his contract according to his own method and is not subject to the control of the other party to the contract. Restrictions imposed by a franchisor upon the other party to the contract may simply be proper guidelines to maintain and preserve the quality and product uniformity associated with the trademark and trade name of the franchisor, or such restrictions may have no other justification except to restrict competition, in which case it would be immaterial whether the other party to the contract is referred to as a franchisee or an independent contractor. *See* 2 Callman, The Law of Unfair COMPETITION TRADEMARKS AND MONOPOLIES § 38.2(a)(1) at 114–15 (3d ed. 1968); Comment, *Antitrust Barriers to Franchising*, 61 Geo.L.J. 189, 190–92 (1972). Although plaintiff asserts that no further discovery is necessary, claiming the status of an independent contractor may raise additional issues concerning the rights and liabilities of the independent contractors, which in turn might require different defenses. Defendant contends such an amendment would do just that and cause serious delay and prejudice to its case.

■ The Court finds that the plaintiff can not be charged with bad faith in seeking the amendment and that there has been no showing that the delay per se will be unduly prejudicial. Indeed discovery often

justifies a subsequent amendment to the complaint. Even though it is predicated upon a different theory, an amendment should be permitted in the absence of the injection of any new issues requiring new and extensive preparation detrimental to the speedy resolution of the case and prejudicial to the defendant. *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.*, 392 F.2d 380, 385–86 (2d Cir. 1968); *Izaak Walton League v. St. Clair*, 497 F.2d 849, 854 (8th Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42 L.Ed.2d 284 (1974).

■ The Court is not concerned with theories or conceptions as to the description or identity of a particular cause of action, but is interested in whether the defendant has been given fair notice in the original complaint of the potential claims set forth in the proposed amendment and whether it will be deprived of any protection otherwise available to it. As has been stated before, the real issue in this case is whether the plaintiff was an employee, a franchisee or an independent contractor. If he is an employee and no more, then the plaintiff has no case. If he is not an employee but a franchisee or an independent contractor under a franchise agreement, it does not follow that the terms of the franchise agreement will violate the Sherman and Clayton Acts. *See Susser v. Carvel Corp.*, 332 F.2d 505 (2d Cir.), *cert. granted*, 379 U.S. 885, 85 S.Ct. 158, 13 L.Ed.2d 91 (1964), *cert. dismissed*, 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965); 84 Harv.L.Rev. 1717, 1722 & n. 24 (1971). The purport of the proposed amendment is not easily discoverable unless the plaintiff wishes to escape his original description of the store managers as franchisees for the reason that he believes he will have a better chance of success under the independent contractor theory. In granting class action status on behalf of former store managers, we stated that "[i]f it is determined that the agreement was a franchise agreement, the sequential issue of violation of antitrust laws would involve predominantly questions of law or fact typical and common to all terminated store managers." *Matarazzo v.*

*Friendly Ice Cream Corp., supra,* at 70. The difficulty with the plaintiff's position at the present time arises from the fact that the legal notice to the class dated April 1974, informed the members that the complaint stated that the store managers were franchisees of Friendly and that Friendly's defense was that the agreement between store managers and Friendly was "one of employer and employee and not one of franchisor and franchisee" and made no mention of independent contractors. Thus, those who became members of the class did so upon the theory that the issues were whether store managers were franchisees or employees, and not whether store managers were independent contractors and not employees.

■ Without more, the Court cannot determine whether an independent contractor under the circumstances of this case would assume greater rights as well as greater liabilities to third-parties than a franchisee. This may only be a matter of semantics. *See* 1 Glickman, FRANCHISING § 4.02 at 4–3 to 4–4 (1975). However, if there are additional burdens to be assumed as independent contractors, members of the class must receive a new notice and have the privilege to opt out. See Fed.R.Civ.P. 23(c)(2). This would delay further the speedy expedition of the trial and might prejudice both parties. If at the trial, evidence indicates that the distinction between a franchisee and an independent contractor injects no new issues into the case, adds no further burdens to the members of the class, nor catches the defendant unprepared, the plaintiff may, under Rule 15, move to amend the pleadings to conform to the evidence. With the above reservation, the Court denies plaintiff's motion to amend the complaint as to Count I.

## COUNT II

■ Plaintiff's application to amend the complaint to add an alleged pendent claim (Count II) raises an entirely different problem. Federal courts have power to assume jurisdiction over state claims in the interest of judicial economy and fairness to the litigants. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). If the claim is derived from a common nucleus of operative facts, then "[t]hat power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1139.

■ Plaintiff seeks to add a claim of fraud, breach of contract and fiduciary obligations predicated upon defendant's conduct that occurred before, during and after the parties' relationship crystallized. An objective analysis of this cause of action reveals that it does not rise out of the common nucleus of operative facts but covers a much broader spectrum of conduct. A table of operative facts alleged to be common to both the antitrust and the common law claims submitted by plaintiff discloses that while some facts may be common to both claims, the two claims certainly do not derive from a "common nucleus of operative facts." Indeed, the nucleus of operative facts applicable to the antitrust claim is quite different from the nucleus of operative facts applicable to the common law claim, which is not unnatural since one is a tort claim and the other is an antitrust claim. *See* 84 Harv.L.Rev. 1717, 1726 & n. 38 (1971). In addition, there is great doubt whether there could be class action certification for this type of misrepresentation and fraud. *See Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65, 144–45 (E.D. Pa.1975). Moreover, the nature of this new claim was certainly not made known to the members of the class when the original notice was published, and it is difficult to see how they could be bound one way or the other by a resolution of this issue without a new notice assuming the claim is a proper subject for class action jurisdiction. See Fed.R.Civ.P. 23(b)(3). The proper remedy for this claim under the circumstances is an action in the state court where it could be tried on its own merits without obfuscating the antitrust violations set forth in the present case. To permit such a state claim to be tried together with the federal claim

would require this Court to exercise its discretion twice, first with respect to the amendment, and second with respect to pendent jurisdiction. To do so would only becloud the antitrust issue and would confuse the jury in resolving the same.

Accordingly, the motion to amend is denied as to both Counts. So ordered.