Michael Robert COLBURN and Dominic Palamides, Individually and as representatives of a class similarly situated, and Elmer Youngblood, doing business as Rotary De-Rooting, Rotorout, and Root-M-Out, Plaintiffs,

v.

ROTO–ROOTER CORPORATION, a corporation and F. E. Wray, Inc., a corporation, Defendants.

No. C–77–1318 SC.

United States District Court, N. D. California.

April 21, 1978.

Armour, Schroder, St. John, Wilcox & Grodin, San Francisco, Cal., for plaintiffs.

Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendant Roto-Rooter Corp.

Broad, Khourie & Schulz, San Francisco, Cal., for defendant F. E. Wray, Inc.

## ORDER

CONTI, District Judge.

This matter is before the court on plaintiffs' motion for class certification pursuant to Rule 23(c)(1), F.R.Civ.P.

This is an antitrust action alleging violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Section 3 of the Clayton Act (15 U.S.C. § 14). Plaintiffs are former sewer cleaners who worked on a

commission basis for defendant F. E. Wray, Inc. (Wray), a Roto-Rooter Corporation franchisee doing business in the Bay Area. They seek certification of "all Roto-Rooter sewer cleaners in the United States working on a commission basis who, at any time from 1973 to the present have been damaged by the defendants' tying and price-fixing conspiracy." (Plaintiffs' Memorandum in Support of Motion for Class Action Certification, at p. 1.) Only tying and vertical price fixing claims under Section 1 of the Sherman Act are raised by this putative class.

Rule 23 states in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.  .  .  .  .  .

(3) the court finds that the questions of law or fact common to the members of the class predominates over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ Plaintiffs claim they have satisfied all requirements of 23(a) and that this action is properly maintained under 23(b)(3). It is their burden to show these requirements have been met. *Albertson's, Inc. v. Amalgamated Sugar Company*, 503 F.2d 459, 463 (10th Cir. 1974); *Krehl v.*

*Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108 (C.D.Cal.1978). In attempting to meet these requirements plaintiffs may not rely solely on the allegations of the complaint, but must provide information sufficient for the court to make a reasonable judgment. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975); *Weathers v. Peters Realty Corporation*, 499 F.2d 1197 (6th Cir. 1974). Certification, conditional or otherwise, of an improper class on the ground that it may later be found to meet the requirements of Rule 23 is not appropriate. *Blackie v. Barrack, supra.*

Plaintiffs contend they represent a class of sewer cleaners in the United States working on a commission basis who were forced to accept from Roto-Rooter Corporation and its franchisees certain tied products, i. e., the Roto-Rooter service mark, Roto-Rooter sewer cleaning machines, cables, blades, and replacement parts for the Roto-Rooter cleaning machines. In addition, plaintiffs claim members of the same class were forced by Roto-Rooter Corporation and its franchisees to set certain prices for sewer service.

Throughout the pleadings plaintiffs, in their allegations, fail to distinguish between acts of Roto-Rooter Corporation and acts of the franchisees thereby making analysis somewhat more difficult. As far as the court can determine plaintiffs appear to claim *either* a 2-step tie-in and system of price-setting between first, Roto-Rooter Corporation and its franchisees, and second, the franchisees and their commission basis sewer cleaners, *or* a single series of tying and price-setting agreements between franchisees and commission basis sewer cleaners that resulted from a conspiracy between Roto-Rooter Corporation and its franchisees.[1] Under either theory, however, the court's analysis of the class question remains the same. And, whichever theory plaintiffs are trying to put forth to show a nationwide class of sewer cleaners similarly

---

1. It is important to note that the franchisee in this case, Wray, is named with Roto-Rooter Corporation as a defendant, allegedly guilty of tying and price-fixing under Section 1 of the Sherman Act. This is not a case of the fran-

chisee complaining of the oppressive acts of the franchisor. See *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43 (9th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972).

situated to plaintiffs, the court finds the materials offered by plaintiffs fail to support their contention that such a class exists.

■ Each of the defendants, Roto-Rooter Corporation and Wray, contends plaintiffs have failed to satisfy any requirement under Rule 23(a) and 23(b)(3). Without addressing each of defendants' contentions the court will at this time deny plaintiffs' motion because plaintiffs have failed to show that there are questions of law or fact common to the class [Rule 23(a)(2)] which predominate over any questions affecting only individual members [Rule 23(b)(3)].

Crucial to both theories is the establishment by plaintiffs that franchisees around the country forced tied products upon their commission basis sewer cleaners and fixed prices to be charged by these sewer cleaners for their services. *See Smith v. Denny's Restaurants, Inc.*, 62 F.R.D. 459 (N.D.Cal. 1974); *Abercrombie v. Lum's Inc.*, 345 F.Supp. 387 (S.D.Fla.1972); *Siegel v. Chicken Delight, Inc.*, 271 F.Supp. 722 (N.D.Cal. 1967), *aff'd* 448 F.2d 43 (9th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1172, 31 L.Ed.2d 232 (1972). The contract that Wray sought to have plaintiffs Colburn and Palamides sign appears to have, in fact, a tying provision for parts (but not a provision setting price) contained within it. Wray, in its memorandum in opposition to the motion for class certification at page 11, admits as much. To find a *class* as described by plaintiffs, plaintiffs must show more than a single contract. Evidence that substantially similar franchisee-commission basis sewer cleaner contracts from other areas exist could support a finding that common

issues predominate over individual issues. *Siegel v. Chicken Delight, supra.* *See also, Smith v. Denny's Restaurants, Inc., supra.* In that case a class action under Rule 23(b)(3) may be appropriate. Plaintiffs have, however, offered no such evidence of other franchise agreements.[2]

There is evidence that standard agreements exist between Roto-Rooter Corporation and its some 800 franchisees. The existence of these agreements is not helpful to plaintiffs on the class issue. It is the prevalence of standard agreements between franchisees and commission basis sewer cleaners upon which turns the propriety of certifying plaintiffs' class.[3] Existence of the agreements between Roto-Rooter Corporation and the franchisees may be relevant on plaintiffs' "nationwide conspiracy" allegation, but, as will be discussed, assuming such a conspiracy, a "predominant common issue" justifying certification of a class is not thereby presented.

■ In the absence of express tying or pricing agreements between the franchisees and commission basis sewer cleaners, plaintiffs must present other evidence of class-wide coercion, *see e. g., Krehl v. Baskin-Robbins Ice Cream Co., supra,* or evidence of individual coercion of commission basis sewer cleaners in order to make out a tying or price-setting claim under Section 1 of the Sherman Act. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3rd Cir. 1977) (tying); *Knutson v. Daily Review, Inc.,* 548 F.2d 795, 806–807 & n.14 (9th Cir. 1976) (price-fixing); *Hanson v. Shell Oil Co.,* 541 F.2d 1352 (9th Cir. 1976) (price-fixing); *Ungar v. Dunkin' Donuts of America, Inc.,* 531 F.2d

2. Plaintiffs, in their memorandum in support of motion for class certification at p. 3, allege that "many agreements between Roto-Rooter franchisees and commission compensated Roto-Rooter sewer cleaners throughout the United States are identical in effect to the contract used by defendant Wray". While not clear what "effect" plaintiffs refer to here, plaintiffs have not offered evidence of these many agreements. Only the franchise agreement of a Mr. King, another Bay Area franchisee, from which defendant Wray's contract was derived has been referred to by plaintiffs.

3. The court notes the standard franchise agreement between Roto-Rooter Corporation and its franchisees does not in any way refer to or set the prices the franchisees are to charge for service, or payments that commission basis sewer cleaners are to receive, or that such sewer cleaners are compelled to use only Roto-Rooter parts. In fact, these franchise agreements do not mention what relationship exists between franchisees and their sewer cleaners— whether as employees or independent contractors operating on commission.

1211 (3rd Cir. 1976) (tying); *Butera v. Sun Oil Co., Inc.*, 496 F.2d 434 (1st Cir. 1974) (price-fixing); *Chicken Delight, Inc. v. Harris*, 412 F.2d 830 (9th Cir. 1969) (tying/price-fixing); *In re 7-Eleven Franchise Antitrust Litigation*, 16 F.R.Serv.2d 537 (N.D.Cal.1972) (tying/price-fixing; *Abercrombie v. Lum's Inc., supra,* (tying). As the court said in *Bogosian*:

> "The principle of *Ungar* [*Ungar v. Dunkin' Donuts of America, Inc.*] is that when a class action tie-in claim is made, without basis in an express agreement, proof of salesmanship coupled with inequality of bargaining power does not prove the existence of a tie, but rather proof of actual coercion on an individual basis is necessary to prove the existence of a tie." (561 F.2d at 451) (footnote omitted)

This same basic reasoning applies also to the kind of vertical price-setting claim plaintiffs make here. *See Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108 at 121.

■ Plaintiffs have not submitted any evidence of admissions of the type found sufficient in *Krehl* to support a finding of classwide compliance with the alleged unlawful practices of defendants. Evidence of a nationwide conspiracy between Roto-Rooter Corporation and franchisees to coerce through business conduct the commission basis sewer cleaners to accept Roto-Rooter products and charge prices set by Roto-Rooter Corporation and the franchisees, see plaintiffs' memorandum in support of class certification motion, Appendices B, C, E, F, G, H, I, of itself does not satisfy the "predominance" requirement of 23(b)(3). *In re 7-Eleven Franchise Antitrust Litigation, supra*; *Abercrombie v. Lum's Inc., supra.* As indicated in *7-Eleven* claims arising from such conduct would still be based on individual facts and circumstances requiring analysis of the relationship between each Roto-Rooter franchisee and its commission basis sewer cleaners to determine whether the alleged business practices had a coercive effect.

Whether or not plaintiffs are then able to prove actual coercion on an individual basis, it is apparent that common questions of law or fact do not predominate and, therefore, a class action with a class as defined by plaintiffs is not an appropriate vehicle for adjudicating these claims. *Ungar v. Dunkin' Donuts of America Inc., supra*; *In re 7-Eleven Franchise Antitrust Litigation, supra*; *Abercrombie v. Lum's Inc., supra.*

■ Plaintiffs have suggested that the incomplete state of the record at this time should not form the basis for denying class certification. That the class should be conditionally certified and if later discovery should disclose the impropriety of proceeding as a class action, then decertification can be ordered. Absent a preliminary showing that this action may be maintained as a class action such a course would be unjustified. *See In re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir. 1974); *Blackie v. Barrack, supra.*

The court will not in this order attempt to redefine within narrower limits another class of which plaintiffs might be members. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 179, n. 16, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In the event plaintiff wishes to do so, the court notes that it has serious doubt of the propriety in this case of combining in one class presently employed commission basis sewer cleaners of Roto-Rooter franchisees with plaintiffs, terminated commission basis sewer cleaners seeking only damages who currently work for competing firms. *See Blackie v. Barrack, supra*, 524 F.2d at 909–911; *Robertson v. National Basketball Association*, 389 F.Supp. 867, 898–899 (S.D.N.Y.1975); *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D 440 and cases cited therein (E.D.Pa.1974); *Van Allen v. Circle K Corp.*, 58 F.R.D. 562 (C.D. Cal.1972); *Free World Foreign Cars Inc. v. Alfa Romeo*, 55 F.R.D. 26 (S.D.N.Y.1972).

In light of the foregoing the court is bound to conclude that plaintiffs have not met their burden of establishing that the action should be maintained as a class action under Rule 23. Accordingly, the motion of plaintiffs Colburn and Palamides for class action certification is hereby denied.